UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SCOTTSDALE INSURANCE COMPANY,

        Plaintiff,

        v.                                        Case No. 21-cv-1001-bhl

GEEBO, LLC, et al.,

        Defendants.

## ORDER GRANTING MOTION TO DISMISS

      This lawsuit concerns civil claims arising from a shooting that left two men, Atkeem Stevenson and Cedric Gaston, dead at a Kenosha, Wisconsin tavern during the early morning hours of April 18, 2021. (ECF No. 49 ¶¶21–22, 28.) Following the shooting, the tavern's insurer, Plaintiff Scottsdale Insurance Company, negotiated what it thought was a final settlement of wrongful death claims by Stevenson's Estate. When the Estate almost immediately repudiated the settlement, Scottsdale filed this lawsuit to enforce the deal. (ECF No. 1.) Over the last two years, the proceedings have expanded significantly with the addition of new parties and the assertion of crossclaims and counterclaims. (*See* ECF Nos. 20, 25, 43, 54 & 69.) The Court has twice agreed to stay all proceedings on the pending crossclaims and counterclaims until Scottsdale's underlying claims are resolved. (ECF Nos. 34 & 70.) Notwithstanding these stay orders, the proceedings have continued to expand. On March 15, 2023, the Estate of Cedric Gaston moved to intervene, a motion the Court granted without objection. (ECF Nos. 41 & 43.) A few weeks later, Scottsdale asked for and received permission to file a second amended complaint in which it seeks: (1) an order enforcing the settlement agreement with Stevenson's Estate and (2) a declaratory judgment that the applicable limits of Scottsdale's policy have been exhausted. (ECF Nos. 44, 48–49.) One defendant, in answering the second amended complaint, has asserted additional crossclaims and counterclaims. (ECF No. 54.)

      Left out from this lengthy (and yet abbreviated) procedural history is the Stevenson Estate's motion to dismiss Count I of Scottsdale's second amended complaint. (ECF No. 50.) The Estate

argues that Count I fails because the purported settlement agreement involves the interests of Stevenson's minor daughter and was not approved by a court, rendering it unenforceable as a matter of law. (ECF No. 51.) The Estate is correct. Because Wisconsin law requires court approval for settlements involving the interests of minors, the Estate's motion will be granted.

## FACTUAL BACKGROUND[1]

Plaintiff Scottsdale Insurance Company (Scottsdale) is a corporation with its principal place of business in Scottsdale, Arizona. (ECF No. 49 ¶ 2.) Defendant Geebo, LLC (Geebo) owns the Somers House, a tavern in Kenosha, Wisconsin. (*Id.* ¶¶3, 21.) Geebo insured its tavern under a policy issued by Scottsdale with an effective policy period of February 9, 2021 through February 9, 2022. (*Id.* ¶13.) Defendant Thomas P. Gochis is a member of Geebo's LLC. (*Id.* ¶¶3, 8.) Defendant James Pappas is Geebo's landlord and an insured under the Scottsdale policy. (*Id.* ¶5.) Defendant Frankie Ovando is the Special Administrator to the Estate of Atkeem Stevenson (the Estate). (*Id.* ¶4.) Defendant Michaela Englert is Special Administrator to the Estate of Cedric Gaston. (*Id.* ¶6.) Finally, Defendant Kevin Serratos was a patron at the Somers House and Defendant Joseph W. Hurley was the establishment's doorman and bouncer. (*Id.* ¶¶9, 29.) Atkeem Stevenson's minor daughter, Annessha Stevenson, is a third-party plaintiff in this case. (ECF No. 51 at 1.)

On the late evening of April 17, 2021, staff at the Somers House removed Rayako Vinson from the premises following an altercation. (ECF No. 49 ¶21.) Shortly after midnight, Vinson returned with a firearm. (*Id.* ¶22.) He "shot into the crowded establishment" and killed two people: Atkeem Stevenson and Cedric Gaston. (*Id.* ¶¶22, 28.)

At the time of the shooting, Geebo was insured under a policy issued by Scottsdale. The Scottsdale policy offered coverage for bodily injury and property damage up $1 million per occurrence and $2 million in the aggregate. (*Id.* ¶15.) This coverage was further limited by an "Assault and/or Battery Limited Liability Coverage" provision, which provides that the policy's coverage "does not apply to 'injury,' 'bodily injury,' 'property damage' 'damages' or 'personal and advertising injury' arising from" "Assault and/or Battery" committed by an insured, an employee of an insured, or "[a]ny other person." (*Id.* ¶18.) The limitation also provides that the

---

[1] The Factual Background is derived from Scottsdale's second amended complaint, ECF No. 49, the allegations in which are presumed true for purposes of the motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–56 (2007).

policy does not apply to "[t]he failure to suppress or prevent Assault and/or Battery by any person . . . above;" or "[t]he selling, serving or furnishing of alcoholic beverages which results in an Assault and/or Battery;" or negligence thereof. (*Id.*) Where the limitation applies, the policy provides limited coverage of $25,000 for each event consisting of "an act or series of acts based on or arising out of the same assault and/or battery" and $50,000 in the aggregate. (*Id*. ¶¶18–19.)

Following the shooting, counsel for the Stevenson Estate attempted to negotiate a settlement with Scottsdale. On July 8, 2021, counsel sent a letter on behalf of the Stevenson family demanding that Scottsdale settle a potential wrongful death claim. (*Id.* ¶20.) In the demand letter, counsel detailed the tragic events of the night of April 17 and highlighted that Stevenson had left behind a four-year-old daughter, Annessha. (ECF No. 49-2 at 3.) Counsel insisted that Scottsdale pay the full policy limits and set a 14-day deadline for acceptance of this settlement offer. (*Id.* at 2.) The letter also demanded that an authorized officer of Scottsdale provide an affidavit swearing to the applicable policy limits within 10 days. (*Id.*; ECF No. 49 ¶20.) Payment was to be made to counsel's law firm. (ECF No. 49 ¶20.) On July 22, 2021, counsel extended Scottsdale's acceptance deadline until August 5, "in exchange for [Scottsdale providing] a complete copy of the Policy." (*Id.* ¶23.)

Scottsdale accepted the settlement offer on the extended deadline and notified the Estate's counsel that it would promptly pay $25,000, which it contended was the policy limit. (*Id.* ¶25.) Scottsdale also provided the Estate's counsel with a copy of the policy. (*Id.* ¶23.) At that time, counsel for the Estate did not asked Scottsdale any "questions about . . . the applicable 'policy limit'" and did not try to clarify "that the demand was for a particular amount." (*Id.* ¶24.) Instead, on August 6, the Estate's counsel "repudiated Scottsdale's acceptance of the settlement demand and issued a revised demand for $2,000,000, subject to the exact same conditions as the July 8, 2021 demand." (*Id.* ¶27.) Scottsdale filed this lawsuit on August 26, 2021, primarily seeking to enforce the settlement agreement it believed it had reached with Stevenson's Estate. (ECF No. 1.)

## LEGAL STANDARD

In deciding a Rule 12(b)(6) motion to dismiss, the Court must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff['s] favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016) (citing *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013)). "To survive a motion to dismiss, the complaint must 'state a claim to relief that is plausible on its face.'" *Id.* at 564 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 564-65 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The complaint must do more than recite the elements of a cause of action in a conclusory fashion." *Id.* at 565 (citing *Iqbal*, 556 U.S. at 678).

## ANALYSIS

The Estate has moved to dismiss Count I, which seeks to enforce what Scottsdale contends was a binding settlement agreement reached between the parties in August of 2001. (*See* ECF No. 49 ¶¶30–33; ECF No. 51.) Citing two Wisconsin statutes, the Estate contends there was no enforceable settlement agreement as a matter of law because third-party plaintiff Annessha Stevenson is a minor beneficiary of the settlement agreement and, thus, any settlement affecting a minor's claims was ineffective unless and until it received judicial approval.[2] (ECF No. 51 at 9.) Based on well-established Wisconsin law, the Court agrees.

The Estate first cites Wisconsin's wrongful death statute, Wis. Stat. § 895.04. This statute allows the personal representative of a deceased person to bring a wrongful death action. § 895.04(1). It also specifically addresses the settlement of wrongful death cases in which the interests of minor children are involved by providing that "[e]very settlement in wrongful death cases in which the deceased leaves minor children under 18 years of age shall be void unless approved by a court of record authorized to act hereunder." § 895.04(2).

The Estate also relies on Wis. Stat. § 807.10(2), which similarly restricts the private settlement of claims in which minors have interests. Section 807.10(2) provides that:

> A cause of action in favor of or against a minor … may, without the commencement of an action thereon, be settled by the guardian, if the guardian is represented by an attorney, with the approval of the court appointing the guardian, or by the guardian ad litem with the approval of any court of record. An order approving a settlement or compromise under this subsection and directing the consummation thereof shall have the same force and effect as a judgment of the court.

---

[2] The Estate also argues that Scottsdale has failed to allege the elements of an enforceable settlement agreement because there was no meeting of the minds and Scottsdale did not accept the Estate's settlement officer in the mode and manner required by the demand. (ECF No. 51 at 11–15.) Because the Court will grant the Estate's motion based on state statutory grounds, it need not reach this argument.

Based on these two statutes, the Estate argues that any potential settlement between it and Scottsdale is unenforceable because it never received court approval. (ECF No. 51 at 9.) Scottsdale offers a series of response arguments, but none change the plain wording of the applicable statutes.

Scottsdale first argues that because the settlement at issue "was not in the context of a 'case,' *i.e.* litigation," Section 895.04 is inapplicable. (ECF No. 60 at 6.) This argument fails because nothing in Section 895.04 suggests it applies only where formal litigation has been filed. Wrongful death claims, like other potential liabilities, often settle before formal litigation is filed. Indeed, good lawyers generally try to resolve disputes before filing a lawsuit. The Estate had a potential wrongful death case to bring against Scottsdale's insured and Scottsdale tried to resolve that liability promptly, before suit was initiated. Both sides were entitled to try for a resolution. But because Stevenson left behind a minor child, Section 895.04 rendered any settlement tentative and indeed "void" unless and until "approved by a court of record." Scottsdale points to no Wisconsin caselaw that would limit the statute's scope to cases that are actually litigated. The Court will not adopt such an awkward reading.

Scottsdale next contends that even if "cases," as used in the statute, is not limited to litigation, "there was no opportunity for court approval of the negotiated-for settlement" because the Estate "repudiated the settlement the day after Scottsdale accepted their demand." (*Id.* at 7.) This argument is also without merit. That its counterparty decided against proceeding with the settlement before the statutory condition to enforceability—court approval—was satisfied is not a basis to disregard the statutory condition. Again, Scottsdale cites no Wisconsin law that would support such an exception to Section 895.04.

Finally, Scottsdale argues that the settlement is enforceable because it "was negotiated between Scottsdale and an attorney retained by Annessha Stevenson's natural guardian, her mother," thus satisfying Section 807.10(2). (*Id.* at 5–6.) But this argument misreads the plain terms of that statute. Section 807.10(2), like Section 895.04, expressly conditions the enforceability of any settlement of a minor's claims on court approval. While Section 807.10(2) allows settlements by guardians who are represented by counsel, agreement with a guardian is not enough. The statute additionally requires "the approval of the court appointing the guardian." No such approval was obtained here.

In the end, both Sections 895.04 and 807.10(2) provide that any settlement between Scottsdale and the Estate was unenforceable unless and until it is approved by a court given that the settlement implicates the rights on a minor, Annessha Stevenson. As the Wisconsin Supreme Court explained in applying the predecessor to Section 807.10(2), a party that negotiates a settlement with a minor without obtaining court approval is taking a "calculated risk." *See Andresen v. Mut. Serv. Cas. Ins. Co.*, 117 N.W.2d 360, 361 (Wis. 1962) ("Since it is clear that a minor cannot be bound by an extra judicial settlement, a calculated risk is taken in striking a bargain without the benefit of judicial approval."). Thus, even if the parties exchanged correspondence and reached a deal on a settlement, that deal was not final and binding unless and until it was confirmed by a court. Because Scottsdale does not allege that such approval was obtained, it cannot enforce any deal that may have been reached.

Count I of Scottsdale's complaint asks this Court to enforce the settlement agreement between itself and the "Stevenson Family." (*See* ECF No. 49 ¶¶30–33.) Because the Court cannot enforce a settlement agreement deemed unenforceable under Wisconsin law, the Estate's motion to dismiss Count I of the complaint will be granted.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the Stevenson's Estate's motion to dismiss Count I of the complaint, ECF No. 50, is **GRANTED**.

Dated at Milwaukee, Wisconsin on October 23, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge