UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SCOTTSDALE INSURANCE COMPANY,

        Plaintiff,

        v.

GEEBO, LLC, et al.,

        Defendants.

Case No. 21-cv-1001-bhl

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

      Late one night in mid-April 2021, Rakayo Vinson was asked to leave the Somers House Tavern. He later returned with a gun, which he used to shoot into the bar, killing two patrons and injuring a third. The State of Wisconsin has since convicted Vinson of multiple counts of first-degree intentional homicide and first-degree attempted homicide. Following the shooting, the tavern's insurer, Plaintiff Scottsdale Insurance Company, negotiated what it hoped was a final settlement of wrongful death claims with the estate of Atkeem Stevenson, one of the shooting victims. When the Stevenson Estate repudiated the settlement, however, Scottsdale filed this lawsuit to enforce the deal and to obtain a declaration concerning its coverage obligations. (ECF No. 1.) The case has since expanded, with amended pleadings and the addition of new parties, counterclaims, and crossclaims. The Court has stayed all proceedings relating to the counterclaims and crossclaims, which concern the liabilities of various parties involved in the shooting, pending resolution of Scottsdale's primary claims concerning the enforceability of the settlement and the limitations of its coverage. (ECF No. 70.) On October 23, 2023, the Court dismissed Scottsdale's first claim, concluding that the purported settlement was unenforceable as a matter of Wisconsin law. (ECF No. 74.) The parties then proceeded to discovery and dispositive motions on the insurance coverage issues.

      Now pending before the Court is Scottsdale's summary judgment motion on its request for a declaratory relief concerning its insurance coverage obligations. For the reasons set forth below, the Court will grant the motion and declare that the plain terms of Scottsdale's Policy obligate

Scottsdale to provide coverage to Defendants Geebo, LLC and Thomas Gochis only, and that Scottsdale's coverage obligations are limited to $25,000 per event.

## FACTUAL BACKGROUND[1]

Geebo is a Wisconsin limited liability company, with its principal place of business in Kenosha, Wisconsin. (ECF No. 96 ¶2.) It has two members, Defendant Thomas Gochis and nonparty Peter Gochis, both domiciled in Wisconsin. (*Id.*) Geebo owns the Somers House Tavern, (*id.* ¶17), which is leased from Defendant James Pappas. (ECF No. 67 ¶5). Scottsdale is an Ohio corporation with its principal place of business in Scottsdale, Arizona. (ECF No. 96 ¶1.)

On April 17, 2021, and into the early morning hours of April 18, 2021, Rakayo Vinson was a patron of the Somers House Tavern, along with Atkeem Stevenson, Cedric Gaston, and Defendant Kevin Serratos. (*Id.* ¶¶17, 19–20.) Vinson was kicked out of the Somers House Tavern but not completely removed from the premises. (*Id.* ¶17.) He returned to the bar with a firearm and shot into the crowd. (*Id.* ¶18.) Vinson's actions led to the deaths of Stevenson and Gaston, and injuries to Serratos. (*Id.* ¶¶18–20.) Vinson was later tried and convicted on three counts of first-degree intentional homicide and three counts of first-degree attempted homicide. (*Id.* ¶22.)

Months before the shooting, on February 9, 2021, Scottsdale issued Geebo a commercial general liability policy bearing policy number CPS7307217 (the Policy). (*Id.* ¶10.) The Policy lists Geebo as the named insured, (ECF No. 49-1 at 7), and has effective dates of February 9, 2021 through February 9, 2022, (ECF No. 96 ¶10). Coverage A of the Policy relates to claims of "bodily injury." (*Id.* ¶12.) Coverage B of the Policy relates to claims of "personal and advertising injury." (*Id.* ¶13.) Coverages A and B are subject to a limit of $1 million per occurrence and a $2 million general aggregate. (*Id.* ¶¶12–13.) The Policy's coverages are expressly modified by an Assault and Battery Endorsement. (*Id.* ¶15.) When applicable, coverage under the Endorsement is limited to $25,000 for each event and $50,000 in the aggregate. (*Id.*) An "event" is defined as "an act or series of acts based on or arising out of the same assault and/or battery." (*Id.* ¶16.)

---

[1] The facts of this section are derived from proposed statements of undisputed facts submitted by Scottsdale and Geebo, ECF Nos. 96 & 104. None of the proposed facts are disputed. (*See* ECF No. 101 at 1; ECF No. 102 at 10–17; ECF No. 104 at 1–9; ECF 110.) The description of the underlying events of April 17 and April 18, 2021 is based on the parties' pleadings. (*See* ECF No. 96 ¶¶17–21). The Court assumes these allegations are true for the purpose of analyzing coverage. *See T.H.E. Ins. Co. v. Olson*, 51 F.4th 264, 267, 270 (7th Cir. 2022).

# LEGAL STANDARD

Summary judgment is appropriate if the record shows there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" if, under the governing law, it could influence the outcome of the lawsuit. *Id.* at 248; *Contreras v. City of Chicago*, 119 F.3d 1286, 1291–92 (7th Cir. 1997). A dispute over a material fact is "genuine" only if a reasonable trier of fact could find in favor of the non-moving party on the evidence presented. *Liberty Lobby*, 477 U.S. at 248.

The moving party bears the initial burden of proving the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. Upon such a showing, the burden shifts to the opposing party to "make a showing sufficient to establish the existence of an element essential to that party's case." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (quoting *Celotex*, 477 U.S. at 322). This burden is not onerous, but the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (emphasis in original) (quoting Fed. R. Civ. P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

If the parties assert different characterizations of the facts, the Court must view the record in the light most favorable to the nonmoving party. *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). "Although we construe all facts and make all reasonable inferences in the nonmoving party's favor, the moving party may succeed by showing an absence of evidence to support the non-moving party's claims." *Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 986 F.3d 711, 718 (7th Cir. 2021) (quoting *Tyburski v. City of Chicago*, 964 F.3d 590, 597 (7th Cir. 2020)).

# ANALYSIS

Scottsdale contends it is entitled to summary judgment on its claim for declaratory relief based on the plain terms of the Assault and Battery Endorsement. It maintains that under the Endorsement, its coverage obligations are limited to the shooting victims' claims against Geebo and Gochis and exclude coverage for Pappas. (ECF No. 97 at 7–11.) It further contends that its coverage is limited to $25,000. (*Id.*)

Defendants dispute Scottsdale's arguments. As a preliminary matter, Defendants Geebo, Gochis, and Pappas contend that the coverage issues are not yet ripe. (ECF No. 103 at 9–14.) With the exception of Defendant Serratos, who did not respond to Scottsdale's motion, the remaining Defendants also dispute Scottsdale's interpretation of the Policy and, more specifically, whether the Assault and Battery Endorsement applies. Defendant Frankie Ovando, as Special Administrator of the Estate of Stevenson, and Intervening Defendant Annessha Stevenson argue that the Assault and Battery Endorsement is ambiguous and should be construed in favor of Geebo as policyholder, rendering it inapplicable to these Defendants' crossclaims. (ECF No. 101 at 5–9.) Defendant Michaela Englert, as Special Administrator of the Estate of Gaston, adopts both the ripeness and interpretation arguments. (ECF No. 102 at 8.)

Under well-established insurance coverage principles, the Court concludes that the issues raised in Scottsdale's Second Amended Complaint are ripe for adjudication. And, based on the plain terms of the Policy, including the Assault and Battery Endorsement, the Court agrees with Scottsdale's position on coverage. The Court will therefore grant Scottsdale's motion for summary judgment and grant its request for declaratory relief.

## I. Scottsdale's Motion for Summary Judgment Is Ripe.

Geebo maintains that Scottsdale's request for declaratory relief is not yet ripe for review. (ECF No. 103 at 9–14.) It notes that Scottsdale has conceded that it has a duty to defend Geebo, regardless of whether that duty arises from the Policy or the Assault and Battery Endorsement. (*Id.* at 9–12.) Based on this concession, Geebo insists that there "is at least an arguable obligation for indemnity under the Policy," and that, since there has been no settlement or judgment as to the claims against Geebo, "[i]t is too early to make a final determination" on Scottsdale's indemnity obligations. (*Id.* at 9, 12.)

If Scottsdale's claim is not ripe, the Court lacks subject matter jurisdiction to resolve it. Article III of the Constitution limits federal jurisdiction to actual cases and controversies. U.S.

Const. art. III, § 2, cl. 1. This limitation is incorporated within the Declaratory Judgment Act: "The phrase 'case of actual controversy' in the Declaratory Judgment Act refers to the type of Cases and Controversies that are justiciable under Article III." *Amling v. Harrow Indus. LLC*, 943 F.3d 373, 377 (7th Cir. 2019) (cleaned up) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)). A case-or-controversy must be ripe. *Cent. States, Se. & Sw. Areas Health & Welfare Fund ex rel. Bunte v. Am. Int'l Grp., Inc.*, 840 F.3d 448, 451 (7th Cir. 2016). An action for declaratory judgment is ripe when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Generally, in insurance cases, "decisions about indemnity should be postponed until the underlying liability has been established." *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003). This rule is not absolute, however. *Amling*, 943 F.3d at 379. It mainly applies when the indemnity dispute is "abstract" or "remote." *T.H.E. Ins. Co. v. Olson*, 51 F.4th 264, 270 (7th Cir. 2022). Accordingly, when a dispute over coverage is real and the material facts relating to the existence or amount of coverage are undisputed, ripeness is not a problem. *See id.* The Seventh Circuit has confirmed that "a tort victim has a practical, albeit only potential, financial interest in the tortfeasor's insurance policy, and the impairment of such an interest is an injury that will support standing under Article III." *Truck Ins. Exch. v. Ashland Oil, Inc.*, 951 F.2d 787, 789 (7th Cir. 1992). This "legally protectable interest . . . is all one needs to bring a dispute that seriously threatens it within the scope of Article III." *Bankers Tr. Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 682 (7th Cir. 1992). An insurer is well within the grounds of Article III when it seeks a declaration of its duty to indemnify an insured. *See Olson*, 51 F.4th at 270.

Here, there is no question of ripeness or Article III standing. The parties allegedly harmed by Vinson's actions have asserted claims against Geebo and various individuals associated with the company. The potential for liability is thus both real and immediate. Moreover, these existing claims give the injured parties a clear financial interest in having a determination of the scope of Geebo's insurance coverage. Defendants' legally protectable interests in the proceeds of Geebo's insurance policy make this matter ripe for adjudication. Moreover, the *material* facts concerning the underlying events giving rise to coverage are undisputed. (*See* ECF No. 101 at 1; ECF No. 102 at 10–17; ECF No. 104 at 1–9; ECF 110.) Vinson, a third party, entered Somers House Tavern

on April 17 and 18, 2021 and opened fire, resulting in two fatalities and an injury. (ECF No. 96 ¶¶17–20.) Defendants identify no evolving or unknown facts related to the shooting that could change how the Policy applies. The lack of any material factual dispute makes the issue of indemnity a matter of contract interpretation, which is purely a question of law. Accordingly, how the Policy and the Assault and Battery Endorsement applies to the events of April 17 and 18, 2021 is ripe for adjudication.

II.   **The Assault and Battery Endorsement Limits Scottsdale's Coverage Obligations.**

Scottsdale seeks a declaration concerning its coverage obligations based on the Assault and Battery Endorsement's application to the claims at issue. More specifically, based on the language in the Endorsement, Scottsdale asks the Court to declare that it has no duty to indemnify or defend Defendant Pappas (Geebo's landlord) and that its duty to indemnify those persons covered by the Endorsement is limited to $25,000. (*See* ECF No. 97 at 11–15.)

Defendants do not dispute that, *if* the Assault and Battery Endorsement applies, then Scottsdale has no duty to Defendant Pappas and its duty to indemnify is limited to $25,000. (*See* ECF Nos. 101–03.) Accordingly, the sole issue is whether the Assault and Battery Endorsement applies to the claims at hand.

   A.   **Coverages Under the Policy and the Endorsement.**

The Policy provides two forms of potentially relevant coverage. Coverage A applies to claims of bodily injury. (ECF No. 96 ¶12.) It provides that Scottsdale "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies." (*Id.*) Coverage A also includes a duty to defend: Scottsdale has "the right and duty to defend the insured against any 'suit' seeking" damages because of bodily injury. (*Id.*) Coverage B of the Policy provides a duty to indemnify and a duty to defend against "personal and advertising injury." (*Id.* ¶13.) Personal and advertising injury includes "[f]alse arrest, detention or imprisonment." (*Id.* ¶14.)

These general coverages are expressly modified, however, by an Assault and Battery Endorsement. (*Id.* ¶15.) The Endorsement provides, in relevant part, that the Policy does not apply to "bodily injury" or "personal and advertising injury" arising from:

>  3. Assault and/or Battery committed by:
>     a. Any insured;
>     b. Any employee/"employee" of any insured; or
>     c. Any other person.

> . . .
>
>    6. The negligent:
>       a. Employment;
>       b. Investigation;
>       c. Supervision;
>       d. Hiring;
>       e. Training;
>       f. Monitoring;
>       g. Reporting to the proper authorities, or failure to so report; or
>       h. Retention;
>       of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by paragraphs **3.** and **4.** above.

(*Id.*)

The Assault and Battery Endorsement further provides that Scottsdale will "afford coverage with respect to Assault and/or Battery Liability only as indicated on this endorsement and subject to the provisions set forth in this endorsement." (*Id.*) The Endorsement then states that Scottsdale will pay on behalf of the insureds:

> [A]ll sums which you shall become legally obligated to pay as damages because of 'injury,' 'bodily injury,' . . . or 'personal and advertising injury' to any person arising out of Assault and/or Battery only if the 'injury,' 'bodily injury,' . . . or personal and advertising injury;
>    a. Takes place at the designated premises; and
>    b. Occurs during the policy period.

(*Id.* ¶15.) Scottsdale is also obligated to defend the insureds against any suit that triggers the Assault and Battery Endorsement. (*Id.*) Insureds are defined as including Geebo, (ECF No. 49-1 at 7, 50), the members of Geebo, "but only with respect to the conduct of [Geebo's] business," the managers of Geebo, "but only with respect to their duties as [Geebo's] managers," and Geebo's "'employees,' other than . . . [Geebo's] managers . . ., but only for acts within the scope of their employment by [Geebo] or while performing duties related to the conduct of [Geebo's] business," (ECF No. 96 ¶15).

Regardless of the number of insureds, the amount of coverage under the Assault and Battery Endorsement is also limited:

> The Limit of Liability stated in [the Assault and Battery Endorsement] as applicable to each "Event" is the most [Scottsdale] will pay for all damages arising out of "injury," "bodily injury,". . . [or] "personal and advertising injury" . . . because of assault and/or battery, regardless of the number of insureds, persons insured, claims made or suits brought or persons or organizations making claims or bringing suits.

> The Limited of Liability stated above as Aggregate, subject to the above provision regarding each Event, is the total limit of [Scottsdale's] liability under [the Assault and Battery Endorsement] for all "damages" in any policy period.

(*Id.*)

### B. Application of the Policy and Endorsement to the Claims at Issue.

"A court's interpretation of the terms and coverage of an insurance policy is purely a question of law and therefore appropriately resolved on summary judgment." *Brown & LaCounte, LLP v. Westport Ins. Corp.*, 307 F.3d 660, 662 (7th Cir. 2002). The parties agree that Wisconsin law applies to interpret the meaning and scope of the policy's coverage. (*See* ECF No. 97 at 6–7; ECF No. 101 at 7–8; ECF No. 102 at 6–7; ECF No. 103 at 9–12.)

According to Scottsdale, the plain terms of the Assault and Battery Endorsement narrow the coverage available for the underlying claims asserted in this case. (ECF No. 97 at 7–9.) Scottsdale insists the Assault and Battery Endorsement makes the Policy inapplicable to "bodily injury" or "personal and advertising injury" that arises "out of assault and/or battery committed by '[a]ny other person,' unless coverage is provided by the [Assault and Battery] Endorsement." (*Id.* at 9.) Scottsdale emphasizes that the claims of Ovando, Annessha Stevenson, Englert, and Serratos all arise out of an assault and/or battery committed by Vinson when he shot into the crowded Somers House Tavern. (*Id.*) It explains that Vinson qualifies as "any other person" under the Assault and Battery Endorsement. (*Id.*) Scottsdale contends that the underlying events giving rise to liability, a shooting (the assault and/or battery) by Vinson (any other person), trigger application of the Assault and Battery Endorsement. (*Id.*)

Defendants argue that the Assault and Battery Endorsement does not apply because the Policy's use of the term "any other person" is ambiguous. (ECF No. 101 at 5–9.) They maintain that "any other person" cannot literally mean "any other person," as Scottsdale insists, because that reading would be "too broad" and renders other portions of the Endorsement redundant. (*Id.* at 7.) They argue that if the Endorsement is interpreted broadly to exclude coverage for an assault and battery committed by "any other person," then earlier language in the Endorsement providing coverage for assaults and batteries committed by "any insured" or "any employee/'employee' of the insured" is rendered meaningless because that language is subsumed within the term "any other person." (*Id.*) Defendants further argue that Paragraphs 3.a. and 3.b. "are illustrative of the intended scope of the [E]ndorsement, which is to limit coverage for Geebo's direct and various liability." (*Id.*) They also point to Paragraph 6 of the Assault and Battery Endorsement, which

they contend supports their interpretation. (*Id.* at 8.) They argue that Paragraph 6 "limits the exclusion to Geebo's failure to supervise persons for whom it 'is or ever was legally responsible <u>and</u> whose conduct would be excluded by [Paragraph] 3 . . . .'" (*Id.* (emphasis in original).) Defendants maintain that Paragraph 6 "works to prevent a plaintiff from pleading around the exclusion for employees and agents in [Paragraph] 3." (*Id.*) They insist that, based on the surrounding language, a reasonable person in the position of the policyholder would interpret the Assault and Battery Endorsement to only apply to assault and batteries committed by persons for whom Geebo is responsible, either directly or vicariously. (*Id.*)

When interpreting an insurance policy, Wisconsin courts "determine and give effect to the intent of the contracting parties." *Am. Fam. Mut. Ins. Co. v. Am. Girl, Inc.*, 673 N.W.2d 65, 73 (Wis. 2004). "Insurance policies are construed as they would be understood by a reasonable person in the position of the insured." *Id.* "Language in an insurance contract is to be given the common and ordinary meaning it would have in the mind of a lay person." *Kremers-Urban Co. v. Am. Emps. Ins. Co.*, 351 N.W.2d 156, 163 (Wis. 1984). Contracts will not be re-written to "bind an insurer to a risk which it did not contemplate and for which it was not paid," unless the terms of the policy are ambiguous. *Inter-Ins. Exch. of Chi. Motor Club v. Westchester Fire Ins. Co.*, 130 N.W.2d 185, 188 (Wis. 1964). A policy is ambiguous when the language is "reasonably or fairly susceptible to more than one construction." *Stanhope v. Brown County*, 280 N.W.2d 711, 722 (Wis. 1979). The interpretation must be reasonable; the Court need not embrace any plausible interpretation of the policy. *Hischhorn v. Auto-Owners Ins. Co.*, 809 N.W.2d 529, 535 (Wis. 2012). If the policy is unambiguous, the Court need not engage in further analysis, it need only apply the policy terms. *Kremers-Urban Co.*, 351 N.W.2d at 163.

Contrary to Defendants' assertions, the language of the Assault and Battery Endorsement is clear and unambiguous. Paragraph 3 specifically limits Scottsdale's coverage for any "bodily injury" or "personal advertising injury" resulting from an assault or battery committed by "[a]ny insured; [a]ny employee/ 'employee' of any insured; or *any other person*." (ECF No. 96 ¶13 (emphasis added).) No reasonable person would read the language of the Assault and Battery Endorsement and believe that "any other person" applies only to Geebo's agents. While "any other person" may render "any insured" and "any employee/'employee' of any insured" unnecessary, this possibility does not change the meaning of the plain language. Though Defendants put much emphasis on Paragraph 6, their arguments are unfounded. Paragraph 6 of

the Assault and Battery Endorsement extends the Endorsement's application to claims of assault and battery under a respondeat superior theory, but its reference to Paragraph 3 does not change the meaning of Paragraph 3. Defendants ignore that Paragraph 3 precedes Paragraph 6 and that Paragraph 3 also has no reference to Paragraph 6 to change the plain meaning of its terms. Further, there is no explanation for how Paragraph 6 could make the meaning of "any other person" ambiguous.

Defendants offer questions about multiple terms that may cover claims arising from the actions of the same person, but they ultimately fail to plausibly explain how "any other person" could be reasonably interpreted to mean anything other than what it actually says—"any other person." Accordingly, since the underlying claims revolve around Vinson's assault and/or battery on April 17 or April 18, 2021, and Vinson qualifies as "any other person," the Assault and Battery Endorsement applies to the crossclaims against Geebo.

Defendants do not dispute Scottsdale's position that if the Assault and Battery Endorsement applies, Scottsdale's coverage obligations are limited. More specifically, the Assault and Battery Endorsement limits Scottsdale's obligations to the named insured (Geebo), members of Geebo, and employees of Geebo. (*See* ECF No. 96 ¶15.) Accordingly, Defendant Pappas is not provided coverage. Further, the Endorsement limits Scottsdale's coverage obligations to $25,000 for each event and $50,000 in the aggregate. (*Id.*) An "event" as "an act or series of acts based on or arising out of the same assault and/or battery." (*Id.* ¶16.) Because the shooting constitutes a series of acts arising out of the same assault and/or battery, Scottsdale's liability is limited to $25,000.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Scottsdale's motion for summary judgment, ECF No. 95, is **GRANTED**. It is hereby declared that:

1. Scottsdale's duty to defend and/or indemnify Geebo and Gochis arises under the Assault and Battery Endorsement;

2. The assault and/or battery committed by Vinson at Somers House Tavern on April 17 or 18, 2021 was one "event" under the Assault and Battery Endorsement, limiting Scottsdale's duty to indemnify to $25,000; and

3. Scottsdale has no duty to defend or indemnify Pappas under the Assault and Battery Endorsement.

Dated at Milwaukee, Wisconsin on December 20, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge